# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| JACK KEYIAN, | Case No. 1:17-cv-00476-SAB |
|---|---|
| Plaintiff, | ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL AND MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | (ECF Nos. 14, 15) |

## I.

## INTRODUCTION

Plaintiff Jack Keyian ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from pain in his knees, shoulders, back, wrists, elbow, and bone spurs. For the reasons set forth below, Plaintiff's Social Security appeal and motion for summary judgment shall be denied and Defendant's motion for summary judgment shall be granted.

---
[1] The parties have consented to the jurisdiction of the United States Magistrate Judge. (See ECF Nos. 6, 8.)

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits on March 27, 2012, and a Title XVI application for supplemental security income on March 27, 2012, alleging in both applications disability beginning August 2, 2009. (AR 228-240.) Plaintiff's applications were initially denied on September 13, 2012, and denied upon reconsideration on March 20, 2013. (AR 66-151.) Plaintiff requested and received a hearing before Administrative Law Judge Sharon Madsen ("the ALJ"). Plaintiff appeared for a hearing on June 3, 2014. (AR 25-65.) On August 8, 2014, the ALJ found that Plaintiff was not disabled. (AR 11-19.) The Appeals Council denied Plaintiff's request for review on February 19, 2016. (AR 1-6.)

On April 19, 2016, Plaintiff filed this action in the Sacramento Division of the United States District Court for the Eastern District of California. (ECF No. 1.) On November 4, 2016, Plaintiff filed a motion for summary judgment. (ECF No. 14.) On December 5, 2016, Defendant filed a motion for summary judgment. (ECF No. 15.) Plaintiff did not file a reply. On April 4, 2017, the mater was transferred to the Fresno Division of the United States District Court for the Eastern District of California. (ECF No. 16.)

### A. Relevant Hearing Testimony

Plaintiff testified at the hearing. He was born on February 3, 1962. (AR 30.) He has been separated from his wife for seven years and he does not have any kids under 18. (AR 30-31.) He is living in a mini storage unit with his dog. (AR 31.) He has a driver's license and is able to drive if he does not take some of his medication. (AR 31.) He has a high school education and he has taken some college units. (AR 31.) He does not have any vocational certifications, but he spent 30 years working in his trade. (AR 32.)

He is able to get dressed on his own, but he makes sure that he does not move wrong. (AR 53.) He takes his time putting on his boots and socks and sometimes he has difficulty putting on his boots. (AR 32, 53.) He is capable of doing housework, but sometimes he has bad days where he would not be able to. (AR 32-33.) It is hard for him to stand. (AR 33.) He uses

a microwave to make his meals. (AR 33.) He does not engage in any social activities and has been a bit of a hermit the last few years. (AR 33.) During the day, he watches television and takes naps. (AR 34-35.) He does not have the "financial mobility to go out and do anything." (AR 34.)

He takes his medication on a schedule, but he is not sure how it will affect him. (AR 34.) Sometimes he does not sleep well for two days and then on the third day he sleeps well because he is so tired. (AR 34.) He takes three rounds of pills each day. (AR 35.) He does not go out after his third round of pills and many times he does not feel comfortable going out on his own after his second round of pills. (AR 35.) He takes blood pressure medication, diabetes medication, and a muscle relaxer, but he does not take the pain medication because it "put[s] [him] over the edge as far as being able to function right." (AR 35, 48-49.) He takes Gabapentin and Skelaxin three times a day, but they only reduce the pain and do not "do the job" for his pain. (AR 47-48.) The Vicodin does not take care of the pain, it just makes him loopy. (AR 48.) Plaintiff received a referral to go to physical therapy, but he is waiting until his diabetic nerve pain is managed. (AR 55.) He would be open to getting surgery on his back, hip, or knee, but he does not think that his current insurance would cover it. (AR 54.)

He worked in industrial and commercial electrical work since 1982. (AR 36.) He spent two years from 2002-2004 at the hospital in Fresno working on an addition. (AR 36.) However, the majority of his career was spent in cheese plants and dairies. (AR 36.) He also worked at the Danish Creamery. (AR 36.) Some of his work was on remodeling projects, but the majority was new construction. (AR 37.) For the last 8 or 10 years that he worked, he was a stainless steel fabricator welder for his electrical union, the IBEW local 100. (AR 37.) In 2005, he had $13,000 in self-employment, which he earned doing electrical work and a minimal amount was from restoring old cars. (AR 37-38.)

Plaintiff has three discs in his back that are slipped. (AR 39.) He was told that the MRI results may not show the problem as pronounced as it feels. (AR 39.) His back pain is constant, but it can be manageable or it can be where regardless of what he does, it will not go away. (AR 40.) If he stands up wrong, something will happen with the discs that cause him to walk like a

crippled old man for three days. (AR 40.) He has not been able to sleep in a bed since his motorcycle accident in 2010 and he struggles to find a comfortable position. (AR 41.) Walking is more uncomfortable for his back than sitting and standing. (AR 41.) He was okay walking into the hearing, but after sitting for 10 to 15 minutes, the pain starts. (AR 41.) When he is in a lot of pain, he sits in his recliner and puts a piece of lumber with a towel around it behind him. (AR 41.) Dr. Cheryll-Anne Mariana told Plaintiff that the lumber takes the load off of that area and redistributes it to other parts of his back. (AR 42.)

He has bad neuropathy in his feet and hands. (AR 49-50.) His feet are numb sometimes, but then after he sits down from doing something, they start throbbing. (AR 50.) Plaintiff has pain in the left side of his butt into his thigh, which his doctor thinks could be sciatica. (AR 50.)

Plaintiff hurt his knee in 1994 or 1995 when he was hit by a forklift at work. (AR 42.) He had arthroscopic surgery on it and rehabilitation, but he has lived with the pain. (AR 42.) The pain in his knee is there no matter what position the knee is in. (AR 43.) He had to go back to work because of the financial stress, and so he took Tylenol PMs every night to sleep. (AR 42.) When he was working, he had some days that were better than others and he sometimes had to take a day off of work. (AR 43.)

Plaintiff has pain in his left hip as a result of the way he walks with his left knee. (AR 43.) The hip pain is just when he walks and it goes away when he sits. (AR 43.)

Plaintiff has spurs and tendonitis in his left shoulder and his right shoulder has mobility issues because of a cracked scapula that he suffered in the motorcycle accident in 2010. (AR 44.) He also cracked his sternum and ribs in the accident. (AR 44.) Although his left shoulder hurts, he can reach overhead with it. (AR 44.) However, he cannot reach overhead with his right shoulder. (AR 44-46.) He brushes his teeth with his left hand, because it hurts his right shoulder. (AR 45.) His ability to use his right shoulder has changed since the accident. (AR 45.)

Plaintiff had MRIs in 2012, but his insurance denied the request for MRIs in 2013. (AR 45.) Dr. Chen told Plaintiff that his back problem is really bad on the left side and on the bottom

where the tailbone is.[2] (AR 45.) Dr. Chen was really concerned about Plaintiff's hip. (AR 46.) Dr. Chen gives Plaintiff the pain medication and the shots. (AR 46.) Dr. Chen offered Vicodin to Plaintiff, but Plaintiff did not want to take it. (AR 46.) Plaintiff receives lidocaine and cortisone injections that are supposed to last three months, but they do not "do the job." (AR 46.) He uses a Dr. Scholl's shoe lift inside his walking shoes. (AR 47.) However, the shoe lift complicates the problem in his back. (AR 47.)

He could pick somebody up and carry them out of the building if he had to do it. (AR 50.) On a routine basis, he could lift 15 to 20 pounds, but he would not want to carry it. (AR 51.) He can stand for 15 to 20 minutes before he has to sit down. (AR 51.) He can walk for 300 to 400 yards. (AR 51-52.) He feels pain when he walks, but the bigger problem is when he sits after walking. (AR 52.) That is when he takes the Tylenol PMs to help him sleep with the pain. (AR 52.) He can sit for 20 to 30 minutes in a certain position. (AR 52-53.) When he gets up, his pain gets exponentially worse. (AR 53.) He climbs stairs one stair at a time, and it is worse for him to go down the stairs than up them. (AR 53.)

He has some good days where he would be able to go to work. (AR 54.) He estimates that he has three bad days a week on average. (AR 54-55.) If he does minimal things during the day, such as only getting up to go to the bathroom, making something to eat, and walking to the mailbox, then the pain is not very bad. (AR 57.) If he does more than that, then the pain is bad and affects him for a couple of days. (AR 57.) When his pain is bad it affects his ability to stay focused and complete tasks. (AR 56.) He drops things. (AR 58.)

A vocational expert, Linda Ferra, also testified. (AR 59-64.)

**B.    ALJ Findings**

The ALJ made the following findings of fact and conclusions of law:

- Plaintiff met the insured status requirements of the Social Security Act through December 31, 2012.

- Plaintiff has not engaged in substantial gainful activity since August 2, 2009, the

---

[2] The transcript states "Dr. Chan," but a review of the medical record indicates that it was Dr. Kai Lieh Chen.

5

1  alleged onset date.
- Plaintiff has the following severe impairments: lumbar degenerative disc disease, cervical spondylosis, left shoulder degenerative joint disease and left knee degenerative meniscus.
- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.
- Plaintiff has the residual functional capacity ("RFC") to lift and/or carry 20 pounds occasionally and 10 pounds frequently. He could sit 6 to 8 hours and stand and/or walk 6 to 8 hours in an 8-hour workday. This capacity most closely approximates light work except he can occasionally stoop, crouch, crawl, climb, and kneel. He requires the option to alternate sitting and standing.
- Plaintiff is unable to perform any past relevant work.
- Plaintiff was born on February 3, 1962, and was 47 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date.
- Plaintiff has at least a high school education and is able to communicate in English.
- Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is "not disabled," whether or not Plaintiff has transferable job skills.
- Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.
- Plaintiff has not been under a disability, as defined in the Social Security Act, from August 2, 2009, through the date of the decision.

(AR 13-19.)

## III.

## LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520; Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

## IV.

## DISCUSSION AND ANALYSIS

Plaintiff argues that the ALJ committed legal error by impermissibly rejecting the medical opinion of Dr. Cheryll-Anne Mariano, Plaintiff's treating physician.[3] Defendant counters that the ALJ properly evaluated the medical evidence and provided legally sufficient reasons for the weight afforded to Dr. Mariano's opinion.

The weight to be given to medical opinions depends upon whether the opinion is proffered by a treating, examining, or non-examining professional. See Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995). In general a treating physician's opinion is entitled to greater weight than that of a nontreating physician because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual." Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995) (citations omitted). If a treating physician's opinion is contradicted by another doctor, it may be rejected only for "specific and legitimate reasons" supported by substantial evidence in the record. Ryan v. Commissioner of Social Sec., 528 F.3d 1194, 1198 (9th Cir.) (quoting Bayless v. Barnhart, 427 F.3d 1121, 1216 (9th Cir. 2005)).

Where the treating physician's opinion is contradicted by the opinion of an examining physician who based the opinion upon independent clinical findings that differ from those of the treating physician, the nontreating source itself may be substantial evidence, and the ALJ is to

---

[3] The ALJ characterized Dr. Mariano as an examining physician. (AR 16.) Plaintiff contends that Dr. Mariano is actually a treating physician, while Defendant asserts that Dr. Mariano is not a treating physician. To the extent that the ALJ erred by finding that Dr. Mariano is an examining physician, any error is harmless because the Court finds that the ALJ provided specific and legitimate reasons supported by substantial evidence for rejecting Dr. Mariano's opinion.

8

resolve the conflict. Andrews, 53 F.3d at 1041. However, if the nontreating physician's opinion is based upon clinical findings considered by the treating physician, the ALJ must give specific and legitimate reasons for rejecting the treating physician's opinion that are based on substantial evidence in the record. Id.

The contrary opinion of a non-examining expert is not sufficient by itself to constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, however, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). The ALJ need not accept the opinion of any physician that is brief, conclusory, and unsupported by clinical findings. Thomas, 278 F.3d at 957. It is the ALJ's responsibility to consider inconsistencies in a physician opinion and resolve any ambiguity. Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 603 (9th Cir. 1999).

The ALJ stated:

> One of the claimant's examining physician's, Dr. Cheryl Anne Mariano, M.D. provided a medical source statement in which she asserted the claimant had only 50 percent use of his hands, fingers, and arms. He would be absent from work five or more days per month and could not climb, push, or pull while sitting. She further stated the claimant could never lift or carry 20 pounds or more and could only stand and walk two hours in an eight-hour workday. She stated the claimant could only sit about two hours in a workday, and only 20 to 30 minutes at one time. She stated he must lie down for an hour per day and cannot walk even one block. Dr. Mariano attributed these limitations to left shoulder problems, low back pain, and hip pain (Exhibit 18F). She also reported the claimant suffers from depression and anxiety, but did not elaborate much (Exhibit 18F, p. 2).
>
> The claimant has no [sic] alleged a mental disorder or any limiting effects of mental symptoms. In addition, the claimant reported that his "depression/anxiety" does not prevent him from working and he has not sought mental health treatment (Exhibit 4A, p. 15).
>
> I find Dr. Mariano's assessment is inconsistent with the relatively mild objective findings throughout the record. Furthermore, this opinion is inconsistent with Dr. Vesali's opinion and the documented beneficial effects of treatment. Therefore, I accord little weight to her assessment as it is consistent with the claimant's reported problem areas.

(AR 16.)

First, the Court addresses the ALJ's finding that Dr. Mariano's assessment is inconsistent with the relatively mild objective findings throughout the record. (AR 16.) Plaintiff argues that

9

the ALJ's assertion that Dr. Mariano's opinion is inconsistent with the objective findings is insufficient as a matter of law. The Ninth Circuit has found:

> To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.

Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988).

The Court must consider whether the ALJ interpreted the facts and clinical evidence. Here, the Court finds that the ALJ interpreted the medical evidence in the record. (AR 15-17.) The Court next reviews the medical evidence to determine whether there is substantial evidence to support this reason provided by the ALJ.

As noted by the ALJ, Plaintiff reported at an office visit on August 28, 2012, that his back, knee, and shoulder pain has increased since his accident, but he exhibited full range of motion in all joints. (AR 15, 393-94.) The Court notes that during that office visit, Plaintiff was unable to perform musculoskeletal testing due to pain. (AR 394.)

The ALJ pointed out that during Dr. Fariba Vesali's consultative examination, Plaintiff had some decreased sensation in the left hand, left lower extremity, and right foot, but Plaintiff had full motor strength throughout. (AR 16, 386.) The ALJ also noted that during Dr. Vesali's examination, Plaintiff had no difficulty moving about the room, but complained of tenderness and some decreased range of motion in the back. (AR 16, 385-86.) Dr. Vesali also noted that Plaintiff had no difficulty in taking off his shoes or putting them on, getting off and on the exam table, picking up a paperclip from Dr. Vesali's hand, and performing finger-to-nose and heel-to-knee tests. (AR 385.) Plaintiff had negative Spurling's, Speed's, and Phalen's tests, but positive Tinel's signs and bilateral carpal tunnel. (AR 386.) Dr. Vesali found that there was no obvious inflammation in the upper and lower extremities and the knee exam, anterior/posterior drawer sign, and valgus/varus stress test are negative. (AR 386.) However, Plaintiff had tenderness in his shoulders, elbows, wrists, 2nd and 3rd fingers, knees down to the feet, lumbar spine, and bilateral iliac crest. (AR 386.) Plaintiff also had a positive straight leg raise test in supine

position at 70 degrees with a complaint of low back pain. (AR 386.)

During his July 8, 2010 hospitalization after his motorcycle accident, Plaintiff's upper and lower extremities were non-tender with full range of motion with right clavicle tenderness and right side chest wall tenderness. (AR 312.) He had no thoracic, lumbar, or sacral midline tenderness and no paraspinal tenderness. (AR 312.) On July 9, 2010, he had pain to his collar bone and right side of his back when moving his shoulder. (AR 329.)

The October 31, 2012 left hip x-rays were negative and October 31, 2012 left shoulder x-rays showed degenerative changes, but no significant degenerative disease, fracture, dislocation, or osseous lesion. (AR 15, 472-73.) The October 11, 2012 MRI of the left knee showed a grade I myxoid degeneration posterior horn of the medial meniscus and no other significant findings. (AR 15, 468.) Plaintiff's October 11, 2012 lumbar spine MRI revealed prominence of the posterior epidural fat at L2-3 and L3-4 with minimal if any spinal stenosis at L2-3 and mild spinal stenosis at L3-4, mild disc desiccation spanning L2-3 through L4-5, and scattered minimal facet hypertrophic degenerative changes. (AR 469-70.)

During Plaintiff's October 4, 2013 appointment with Dr. Mariano, Plaintiff had no sensory exam abnormalities, no paraspinal tenderness, the straight leg raising test was negative, and he had full range of motion. (AR 844.) During Plaintiff's March 4, 2014 appointment with Dr. Mariano, Plaintiff had "point tenderness" in the lumbar area and pain reproducible on straight leg raising test as well as limited range of motion on left shoulder with crepitus and no swelling. (AR 850.)

On October 9, 2012, Plaintiff was unable to do range of motion or examination and Plaintiff appeared in pain and discomfort. (AR 480.) On October 26, 2012, it was noted that Plaintiff appears in discomfort, but there were no other physical objective findings. (AR 486-89.) On November 7, 2012, November 30, 2012, and December 28, 2012, there were no objective findings for Plaintiff's problem areas. (AR 495-98, 499-502, 523-25.)

On February 8, 2013, Plaintiff had an antalgic gait, was not able to walk on his toes or heels, and was not able to squat half way down and hold it for three seconds. (AR 514.) Plaintiff was able to stand up from a seated position without assistance. (AR 514.) He had a

muscle spasm in bilateral lumbar paraspinal muscle and he was tender to touch at midline of lumbar spine and left PSIS. (AR 514.) The Patrick's test was negative bilaterally and the straight leg raising test was negative bilaterally. (AR 514.) He had range of motion in his lumbar spine of 50 degrees flexion and 20 degrees extension. (AR 514.)

On April 16, 2013, Plaintiff had joint tenderness in the left lower back L5-S1 and paraspinal of L5, but he had no clubbing, cyanosis, edema, or deformity and he had normal full range of motion of all joints. (AR 570.) On April 26, 2013, Plaintiff had tenderness to touch at left PSIS. (AR 566.) On May 17, 2013, Plaintiff had one trigger point identified on his left lower lumbar paraspinal muscle and he had tenderness to touch at left PSIS. (AR 562.) On June 18, 2013, Plaintiff had tenderness to palpation in his left lower back without masses or spasms, and he had a positive straight leg raising test with his right leg. (AR 833.) Plaintiff had decreased range of motion in his left hip in all directions due to tenderness and a mild antalgic gait was noted. (AR 833.) On August 5, 2013, Plaintiff had tenderness in his left lower back and a mild antalgic gait. (AR 824.) Plaintiff also had medial tenderness in his left knee with normal range of motion without crepitance. (AR 824.) On August 22, 2013, Plaintiff had abnormally decreased deep tendon reflexes in the left knee, tenderness to palpation in the left low back/hip area, 3/5 left hip strength, and a slight antalgic gait. (AR 819.)

Therefore, the Court finds that the ALJ provided a specific and legitimate reason supported by substantial evidence for rejecting Dr. Mariano's opinion when she found that Dr. Mariano's assessment is inconsistent with the relatively mild objective findings throughout the record.

Next, the Court reviews the ALJ's finding that Dr. Mariano's opinion is inconsistent with Plaintiff's reported problem areas.[4] (AR 16.) In her May 20, 2014 opinion, Dr. Mariano found that Plaintiff suffers from depression and anxiety which affects his physical condition and/or contributes to the severity of his symptoms and functional limitations. (AR 858.) However,

---

[4] While the ALJ stated "consistent with the claimant's reported problem areas," it is clear that in the context of the sentence, the ALJ made an inadvertent typographical error. (AR 16.) The sentence should read, "[t]herefore, I accord little weight to her assessment as it is inconsistent with the claimant's reported problem areas." (AR 16.)

Plaintiff did not report any psychological symptoms during his visits with Dr. Mariano. (AR 843-45, 849-51.) Plaintiff also did not report any psychological symptoms during his other office visits that are in the medical record. (AR 392-95, 479-83, 486-89, 495-502, 513-14, 523-25, 562-71, 818-25, 832-34.) The ALJ noted that Plaintiff has not alleged a mental disorder or any limiting effects of mental symptoms. (AR 16.) The ALJ also noted that Plaintiff "reported that his 'depression/anxiety' does not prevent him from working and he has not sought mental health treatment (Exhibit 4A, p. 15)." (AR 16.) T. Lor with the State Agency noted that Plaintiff stated during a phone call that mentally he is able to do his own activities of daily living, but his physical pain limits him from working. (AR 120.) Plaintiff stated that his depression and anxiety do not prevent him from working. (AR 120.)

Another limitation that Dr. Mariano found in her May 20, 2014 opinion was that Plaintiff only had 50 percent use of his hands and fingers. (AR 16, 860.) As noted above, during Plaintiff's two visits with Dr. Mariano, she did not note any deficits in Plaintiff's ability to use his hands or fingers or any limitations using them. (AR 843-45, 849-50.) Further, Plaintiff did not report any problems using his hands or fingers to Dr. Mariano. (AR 843-45, 849-50.) Plaintiff did not report any issues with his hands or fingers at most of his office visits. (AR 392-95, 479-83, 486-89, 495-502, 513-14, 523-25, 562-71, 818-25, 832-34.) The Court notes that Plaintiff did report to Dr. Vesali during the consultative examination that he has pain in both elbow and the right wrist that comes and goes and constant pain in his left wrist. (AR 384.) Dr. Vesali also noted that Plaintiff said that using the hand exacerbates the shoulder pain changing position decreases the pain. (AR 384.) Plaintiff did report on his disability report that his wrists and elbow limit his ability to work and he said on his exertion questionnaire that his hands prevent him from carrying out a normal workday. (AR 256, 273.) Even though Plaintiff reported to Dr. Vesali and on his disability forms about his wrist, hand, and elbow pain, he did not report any problems using his hands or fingers to Dr. Mariano or to the other doctors in the record.

Therefore, the Court finds that the fact that Dr. Mariano's assessment is inconsistent with the claimant's reported problem areas is a specific and legitimate reason supported by substantial

evidence for rejecting Dr. Mariano's opinion.

Next, the Court reviews the ALJ's finding that Dr. Mariano's opinion is inconsistent with the opinion of Dr. Vesali, the consultative examiner. (AR 16.) Plaintiff argues that this is an improper reason because Dr. Vesali did not review the medical records or review imaging studies. Defendant asserts that Dr. Vesali's opinion was more consistent with the relatively mild imaging evidence and clinical findings in the record and the ALJ properly gave it more weight. The ALJ noted that Dr. Vesali did not have the opportunity to review the imaging studies or pain management records. (AR 16.) The ALJ also found that "[t]he evidence elsewhere in the record confirms degenerative changes in the spine, shoulder, and knee which would reasonably reduce the claimant's physical residual functional capacity from a full range of medium work activity to a range of light work activity." (AR 16.) Dr. Vesali noted that "[f]or better evaluation of the claimant's functional assessment, I would consider reviewing imaging studies of knees and wrists." (AR 387.) Therefore, the Court finds that the fact that Dr. Mariano's opinion is inconsistent with Dr. Vesali's opinion is not a specific and legitimate reason supported by substantial evidence for rejecting Dr. Mariano's opinion.

The ALJ also found that Dr. Mariano's opinion is inconsistent with the documented beneficial effects of treatment. (AR 16.) The ALJ noted that Plaintiff reported immediate pain relief from the trigger point injections to the left lower lumbar paraspinal muscle. (AR 15-16.) On May 17, 2013, Plaintiff had a pain management office visit for a follow-up for his back pain with Dr. Chen. (AR 562.) During that visit, Plaintiff received a trigger point injection in the left lower lumbar paraspinal muscle and Plaintiff had immediate pain relief. (AR 564-65.) However, at Plaintiff's next visit with a doctor on June 18, 2013, Plaintiff reported that he had back pain. (AR 832-34.) Therefore, the Court finds that this is not a specific and legitimate reason supported by substantial evidence for rejecting Dr. Mariano's opinion. (AR 832-34.)[5]

///

---

[5] Any error in discounting Dr. Mariano's opinion because it is inconsistent with Dr. Vesali's opinion and it is inconsistent with the documented beneficial effects of treatment is harmless because the ALJ provided other specific and legitimate reasons supported by substantial evidence for rejecting Dr. Mariano's opinion. See Carmickle, 533 F.3d at 1162 (citing Batson, 359 F.3d at 1197).

## V.

## CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ did not err in rejecting Dr. Mariano's opinion.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's social security appeal and motion for summary judgment are DENIED and that Defendant's motion for summary judgment is GRANTED. It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Jack Keyian. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated: **August 15, 2017**

_____
UNITED STATES MAGISTRATE JUDGE